*54 BURDICK, C.J.,
concurring in part and dissenting in part.
I concur -with the majority insofar as it affirms summary judgment to Anderson. I write separately to respectfully dissent from the majority’s analysis in Part III, where it affirms summary judgment to the Coonses.
As the majority correctly recites, the Deifc-ers asserted the Coonses violated the Federal Meat Inspection Act (FMIA) in three main ways:
First, they prepared human food for commerce not in compliance with the requirements of this chapter. Second, they received for transportation food articles which were adulterated at the time of such receipt for transportation. Third, they received food articles that were required to be inspected under this subchapter, given that they were not operating as a “custom exempt” plant.
The shortcomings of the majority’s analysis emerge when the Deiters’ first argument is addressed. The majority overlooks how the FMIA defines “prepare” to mean “slaughtered, canned, salted, rendered, boned, cut up, or otherwise manufactured or processed.” 21 U.S.C. § 601(Z). Indeed, the majority never acknowledges the FMIA’s broad definition of “prepare.” As a result, the majority is led to sidestep the Deiters’ argument, raised before the district court, triggering the FMIA’s broad definition of “prepare”—i.e., that “the Coons Defendants clearly dealt with ‘adulterated’ beef that they further processed into steaks, roasts, and ground beef.” That assertion, if true, would indicate a violation of 21 U.S.C. § 610(a). But perhaps most critical in this regard, the district court made no finding as to whether the Coonses “prepared” the beef in violation of the FMIA, and I would therefore adhere to precedent and refrain from doing so on appeal. Cf. Boise Tower Assocs., LLC v. Hogland, 147 Idaho 774, 784, 215 P.3d 494, 504 (2009) (remanding case for resolution of issues the district court never reached).
Further, I cannot agree with the majority’s conclusion that “the Deiters’ argument that Doris Meats was not a custom exempt facility was erroneous.” 21 U.S.C. § 623 governs exemptions and specifically exempts “[pjersonal slaughtering and custom slaughtering for personal, household, guest, and employee uses.” That provision states:
The provisions of this subehapter requiring inspection of the slaughter of animals and the preparation of the carcasses, parts thereof, meat and meat food products at establishments conducting such operations for commerce shall not apply to [1] the slaughtering by any person of animals of his own raising, and the preparation by him and transportation in commerce of the carcasses, parts thereof, meat and meat food products of such animals exclusively for use by him and members of his household and his nonpaying guests and employees; [2] nor to the custom slaughter by any person, firm, or corporation of cattle, sheep, swine or goats delivered by the owner thereof for such slaughter, and the preparation by such slaughterer and transportation in commerce of the carcasses, parts thereof, meat and meat food products of such animals, exclusively for use, in the household of such owner, by him and members of his household and his nonpaying guests and employees; [3] nor to the custom preparation by any person, firm, or corporation of carcasses, parts thereof, meat or meat food products, derived from the slaughter by any person of cattle, sheep, swine, or goats of his own raising, or from game animals, delivered by the owner thereof for such custom preparation, and transportation in commerce of such custom prepared articles, exclusively for use in the household of such owner, by him and members of his household and his nonpaying guests and employees: ... Provided further, That custom operations at any establishment shall be exempt from inspection requirements as provided by this section only if the establishment complies with regulations which the Secretary is hereby authorized to promulgate to assure that any carcasses, parts thereof, meat or meat food products wherever handled on a custom basis, or any containers or packages containing such articles, are separated at all times from carcasses, parts thereof, meat or meat food products prepared for sale, and that all such articles prepared on a custom basis, or any containers or packages containing such arti- *55 eles, are plainly marked “Not for Sale” immediately after being prepared and kept so identified until delivered to the owner and that the establishment conducting the custom operation is maintained and operated in a sanitary manner.
21 U.S.C. § 623(a). Thus, the above furnishes three situations in which the slaughter and preparation of meat are exempt, The Coons-es argue they are exempt as a custom operation under the third situation, which exempts:
[T]he custom preparation by any person, firm, or corporation of carcasses, parts thereof, meat or meat food products, derived from the slaughter by any person of cattle, sheep, swine, or goats of his own raising, or from game animals, delivered by the owner thereof for such custom preparation, and transportation in commerce of such custom prepared articles, exclusively for use in the household of such owner, by him and members of his household and his nonpaying guests and employees[.]
Id. Distilled, the plain language of this exemption covers entities that prepare meat slaughtered by any person of cattle of his own raising, which was delivered by the owner of the beef for custom preparation that is exclusively for the owner’s household use. In other words, two main requirements must be met for the Coonses to fit this exemption: (1) the same person who raised the beef must have slaughtered it; and (2) the owner must have delivered it to the Coonses for processing for the owner’s exclusive household use.
Both requirements are lacking in this case. First, the same person who raised the beef did not slaughter it. Instead, Anderson recruited Janak, Inc., a mobile slaughtering business, to slaughter the beef after it had already been raised. Second, the owner of the beef did not deliver it to the Coonses. Rather, Janak, Inc. delivered the beef to the Coonses after the slaughter. And, at that time, the Deiters owned the beef, not Janak, Inc. Thus, the custom exemption does not apply to the Coonses.[1] But even if it did, the Coonses would be exempt “only if the[y] ... eompl[y] with regulations which the Secretary is hereby authorized to promulgate,” as stated under 21 U.S.C. § 623(a). Those regulations—numerous and detailed[2]—have neither been addressed by the majority nor argued by the parties at any proper length on appeal.
Finally, the majority maintains that summary judgment is properly affirmed because the Deiters have presented no evidence of proximate cause. Given this Court’s clearly defined role under Article 5, Section 9 of the Idaho Constitution “to review, upon appeal, any decision of the district court[ ],” I would refrain from reaching the issue of proximate cause. The district court never reached the issue of proximate cause; therefore, no decision on that issue exists for this Court to review. This Court has so held in the past, and today should be no different. E.g., Ada Cty. Highway Dist. v. Total Success Invs., LLC, 145 Idaho 360, 368, 179 P.3d 323, 331 (2008) (“This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error.”). In any event, unlike the majority, I do not believe we are equipped to resolve proximate cause as a matter of law in this ease. None of the Coons’ proximate cause arguments are properly suited for a negligence per se causation analysis—ie., whether the Coonses violated the FMIA, and if so, whether that violation caused the Deiters’ injuries.
For the above reasons, -I am unable to join Part III of the majority’s opinion.
Justice J. Jones, Pro Tem concurs.

. I note that the U.S. Senate introduced a bill that, if enacted, would produce a different result. If enacted, the Processing Revival and Intrastate Meat Exemption Act would exempt from the FMIA custom preparation, like the Coons' processing in this case, if that preparation is (1) “carried out in accordance of the law of the State in which the custom slaughter facility is located”; and (2) "prepared exclusively for distri-button to ... (i) household consumers within the State....” S. 2651, 114th Cong, (as introduced by the U.S. Senate on March 8, 2016). However, because that bill has not been enacted, we must apply the plain language of the statute in effect.

. See9C.F.R. § 303.1.